UNITED STATES DISTRICT COURT
FOR THE WESTERN OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RANDY BEHNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>QEP MIDSTREAM PARTNERS, LP, TESORO LOGISTICS LP, SUSAN O. RHENEY, DON A. TURKLESON, and GREGORY C. KING,<br><br>Defendants. | No. 5:15-cv-415<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Randy Behner ("Plaintiff"), by and through Plaintiff's attorneys, alleges as follows:

**INTRODUCTION**

1. Plaintiff is a public unitholder of QEP Midstream Partners, LP. ("QEP" or the "Company"). On April 6, 2015, Defendants announced that Tesoro Logistics LP ("TLLP") and QEP signed a merger agreement whereby TLLP will acquire QEP in a unit-for-unit exchange. Under the terms of the merger agreement, QEP public unitholders will receive 0.3088 TLLP common units for each QEP Common Unit held.

2. Defendants seek approval from QEP's public unitholders for the merger. To that end, on May 11, 2015, Defendants filed a Registration Statement on S-4 ("Registration Statement") with the U.S. Securities and Exchange Commission ("SEC"). The purpose of the Registration Statement is to encourage QEP's shareholders to accept the merger.

3. Plaintiff brings this action for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and SEC Rule 14a-9 promulgated thereunder because the Registration Statement is false and materially misleading.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to §27 of the 1934 Act for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendants:

   (a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products in this District;

   (b) conduct substantial business in this District; and

   (c) are subject to personal jurisdiction in this District.

## PARTIES

6. Plaintiff has held QEP public units at all material times. Plaintiff is a citizen of the state of Illinois.

7. Defendant QEP is a Delaware Limited Partnership, with its principal place of business located in San Antonio, Texas. QEP common units are listed on the NYSE under the ticker symbol "QEPM." QEP was formed by QEP Resources, Inc. to own, operate, acquire and develop midstream energy assets. QEP's primary assets consist of ownership interests in four gathering systems and two FERC-regulated pipelines through which QEP provides natural gas and crude oil gathering and transportation services. QEP's assets are located in, or are within close proximity to, the Green River Basin located in Wyoming and Colorado, the Uinta Basin located in eastern Utah,

and the Williston Basin located in North Dakota. As of the year ended December 31, 2014, QEP's gathering systems had over 1,500 miles of pipeline. QEP believes its customers are some of the largest natural gas producers in the Rocky Mountain region. Defendant QEP may be served with process through its Registered Agent, Corporation Service Company at 2711 Centerville Road, Suite 400, Wilmington Delaware 19808.

8. Defendant TLLP is a Delaware Limited Partnership, with its principal place of business located in San Antonio, Texas. Defendant TLLP may be served with process through its Registered Agent, Corporation Service Company dba CSC-Lawyers Incofporationg Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

9. Defendant Susan O. Rheney is and has been a director of QEP at all material times. Defendant Rheney may be served with process at 1070 Neils Ft, Greensburo, GA 30642-4873, or wherever she may be found.

10. Defendant Don A. Turkleson is and has been a director of QEP at all material times. Defendant Turkleson may be served with process at 6311 Rodrigo Street, Houston, Texas 77007, or wherever he may be found.

11. Defendant Gregory C. King is and has been a director of QEP at all material times. Defendant King may be served with process at 512 Elizabeth Road, San Antonio, Texas 78209-6133, or wherever he may be found.

12. The director defendants are, at times, collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action on Plaintiff's own behalf and as a class action on behalf of all public unitholders of QEP common stock who are being and will be harmed by the Defendants'

actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

14. This action is properly maintainable as a class action under Rule 23.

15. The Class is so numerous that joinder of all members is impracticable.

16. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

    (a) Whether the Registration Statement is false or materially misleading.

17. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

18. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

19. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

20. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

21. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE FALSE AND MATERIALLY MISLEADING REGISTRATION STATEMENT**

22. On May 11, 2015, Defendants provided QEP's public unitholders with a Registration Statement for use in determining whether to accept the takeover by TLLP. The Registration Statement asks QEP' public unitholders to accept the merger. The Registration Statement describes the alleged process by which QEP's Board agreed to sell QEP to TLLP. The Registration Statement also provides a summary of the financial analyses performed by Tudor, Pickering, Holt & Co. Advisors, LLC ("TPH").

23. The Registration Statement is false and materially misleading. The Registration Statement deprives QEP's public unitholders of the ability to cast rational, intelligent and informed votes in favor or against the takeover of QEP by TLLP.

   *(a)   The Nature of the Conflicts Committee*

24. On page 46 of the Registration Statement, Defendants describe a "Conflicts Committee" to consider the interim proposal by TLLP regarding an omnibus agreement. However, the Registration Statement does not describe: (a) whether the Conflicts Committee was a standing committee, or ad hoc; (b) when was it established; (c) its duties, powers, restrictions, etc.; (d) the criteria for service on the committee; and, (e) the specific reasons why candidates qualified or did not qualify for membership on the Conflicts Committee.

25. QEP is inextricably-linked to and arguably controlled by QEP Resources, Inc. and its principals and officers. For instance, in QEP's annual report filed with the SEC on March 10, 2015, QEP stated:

> On December 2, 2014, the midstream business of QEP Resources, Inc. ("QEP Resources") was acquired by TLLP, which included all of the issued and outstanding membership interest of QEP Field Services, LLC ("QEPFS"), a wholly-owned subsidiary of QEPFSC formed for purposes of consummating the QEP Field Services acquisition, pursuant to the Membership Interest Purchase Agreement, dated as of October 19, 2014, by and between TLLP and QEPFSC. QEPFS is the owner of QEP Midstream's general partner, which owns a 2%

general partner interest in QEP Midstream and all of the Partnership's incentive distribution rights. The acquisition also included an approximate 56% limited partner interest in the Partnership (collectively, the "Acquisition"). Prior to the Acquisition, QEPFSC owned and operated QEP Midstream's general partner. This resulted in a change of control of the Partnership's general partner and the Partnership became a consolidated subsidiary of TLLP on the acquisition date. The transaction included consideration of $230.0 million paid by TLLP to refinance the Partnership's debt outstanding under the Prior Credit Facility. The transaction did not involve the sale or purchase of any QEP Midstream common units held by the public. Prior to this transaction, QEP Resources, through its wholly-owned subsidiary, QEPFSC, served as the Partnership's general partner and owned a 2% general partner interest, all of the Partnership's incentive distribution rights and an approximate 56% limited partner interest in the Partnership.

26. Without this information about the independence of the Conflicts Committee, QEP public unitholders are deprived of the ability to gauge for themselves whether it was a real and effective barrier to blocking out interests adverse to QEP's public unitholders.

(b)   *The Nature of the Potential Conflicts of Interest Between THP and TLLP*

27. On page 48 of the Registration Statement, Defendants state: "The representatives of TPH also presented information as to the historical relationship of TPH with TLLP and its related entities." However, this "historical relationship" is not further described. The public unitholders of QEP are unable to know how much weight and credence to give TPH's financial opinion without this disclosure. *See*, *e.g.*, *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 832 (Del. Ch. 2011) ("Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, this Court has required full disclosure of investment banker compensation and potential conflicts.").

(c)   *Disparate Views Regarding the Resultant Value for QEP Shareholders*

28. On pages 51 and 52 of the Registration Statement, Through the Registration Statement, Defendants describe QEP and TLLP having differences of opinion over the accretive/dilutive value of the transaction:

>On the morning of February 20, 2014, Mr. King met with Messrs. Goff and Anderson in person and communicated that, subject to the negotiation of a mutually satisfactory form of merger agreement, the QEPM Conflicts Committee was willing to support a transaction by which TLLP would acquire all of the publicly held units of QEPM if the exchange ratio were increased to 0.35 TLLP common units for each publicly held unit of QEPM. Mr. King delivered to Mr. Goff a copy of the committee's written negotiation points at the start of the meeting. Mr. Goff advised Mr. King that the highest premium from TLLP's current offer that they would be willing to consider offering QEPM's unitholders in the proposed merger would be two percent, but that they would not make a counter, if any, at this time. Mr. Goff stated that TLLP's unwillingness to go higher is based upon: (i) ***TLLP's analysis that its proposed exchange ratio of 0.2846 is dilutive to TLLP's unitholders***, (ii) TLLP's belief that QEPM's unitholders are in a better position with TLLP than without TLLP considering QEPM's prospects as a standalone entity and (iii) TLLP's units had not performed well following the announcement of the QEP Field Services acquisition and TLLP's equity and debt offerings following such announcement. Mr. King and Mr. Goff discussed, among other things, the need to obtain QEPM's unitholder vote as well as the potential unit price ramifications of a failed merger, using the failed TransMontaigne/NGL Energy Partners merger as an example. Mr. Goff noted one option available to TLLP was to abandon the proposed merger and instead purchase QEPM units on the open market over time. At the meeting, Mr. Goff gave Mr. King written materials in support of TLLP's position.
>
>Also at the February 20th meeting, Mr. King requested, on behalf of the committee, a firm counteroffer from TLLP to the QEPM Conflicts Committee's counteroffer. ***Mr. King noted to Mr. Goff that, contrary to TLLP's position, the QEPM Conflicts Committee and TPH believed that the QEPM Conflicts Committee's counteroffer would result in a transaction that was accretive to TLLP's unitholders. The parties then discussed TLLP's different calculation and conclusion and agreed to involve TPH in further discussions regarding the calculation***.

29. However, Defendants offer no detail or specifics as to the mathematical or analytical differences for these disparate views. An explanation for such differences is critical for QEP public unitholders to grasp and understand whether the proposed sale of QEP is in their best interests.

    (d)    *The Nature of QEP's Stand-Alone Prospects*

30. On page 53 of the Registration Statement, Defendants state that the stand-alone prospects of and associated costs of maintaining QEP were a material factor as to why the merger should occur:

- 7 -

>During the morning of February 26, 2015, the QEPM Conflicts Committee held a telephonic meeting. Present telephonically at the meeting were representatives of Andrews Kurth and TPH. Mr. King gave a brief report on several aspects of the QEPM Board meeting, which the committee had attended in person earlier that day, including QEPM's standalone prospects, and the complexity and expense of maintaining QEPM as a separate public company. The QEPM Conflicts Committee then discussed that these matters should incentivize TLLP to consummate the proposed merger.

31. However, the Registration Statement omits a discussion or analysis of whether the stand-alone prospects of and associated costs of maintaining QEP had changed materially (if at all) since QEP had opted to trade publicly in the fall of 2013. Without this information, QEP's public unitholders lack the ability to decide whether the proposed merger is fair to them from a financial standpoint.

*(e) Differing Benchmarking Assumptions*

32. On page 53 of the Registration Statement, Defendants describe "precedent transactions":

>Mr. Anderson continued by stating that TLLP would not pay a premium higher than the low single digits. He also noted that TLLP would not present the QEPM Conflicts Committee with a counteroffer prior to the full QEPM Board meeting scheduled for Thursday, February 26, and may not be in a position to counter at that meeting. However, Mr. Anderson confirmed that if TLLP were to present their counter at the full board meeting, they would not expect the QEPM Conflicts Committee to respond at the same meeting. Finally, Mr. Anderson stated that TLLP was examining the option of rescinding the proposal and ending talks with the QEPM Conflicts Committee if the parties were unable to reach agreement. In response, TPH then discussed with Mr. Anderson certain precedent transactions including TEPPCO/Enterprise, Duncan/Enterprise and TransMontaigne/NGL Energy Partners. Following the call, TPH summarized the call for the QEPM Conflicts Committee and representatives of Andrews Kurth.

33. However, TPH would exclude these three "precedent transactions" from its overall valuation analysis, despite listing dozens of other companies. An explanation for why these precedent transactions ostensibly moved the needle during the merger discussions but then vanished from TPH's overall valuation analysis is a material omission.

34. Moreover, on page 55 of the Registration Statement, Defendants go on to generically state that the precedent transactions were inapplicable:

> In the afternoon of March 25, 2015, the QEPM Conflicts Committee met by telephone, along with representatives from each of TPH and Andrews Kurth. Mr. King recounted his call with Mr. Goff and asked the committee to consider the 0.3088 exchange ratio currently offered by TLLP. The QEPM Conflicts Committee discussed several matters, including whether Mr. King asked Mr. Goff why TLLP would not offer a premium that was nearer to the 12% median of the comparable precedent transactions that the parties had previously discussed. Mr. King confirmed that he asked such question and relayed Mr. Goff's response that (i) he did not believe those comparable transactions were representative of the proposed transaction and (ii) QEPM's business was not as valuable as the comparable targets. After additional discussion, the QEPM Conflicts Committee unanimously approved the 0.3088 exchange ratio. Mr. King then called Mr. Goff to convey the committee's agreement subject to agreement on the terms of a definitive merger agreement.

35. There is no explanation in the Registration Statement for why "Mr. Goff" believed that the precedent transactions "were not representative of the proposed transaction."

36. On pages 69-70 of the Registration Statement, Defendants summarize TPH's comparable companies and precedent transactions analyses but omit:

(a) the objective selection criteria and display the observed company-by-company pricing multiples, yields and financial metrics examined by TPH;

(b) the ranges of EV to EBITDA multiples selected by TPH. The text refers to "range[s] of EV to EBITDA multiples… discussed above," yet no ranges were discussed above. Individual median figures (not ranges) were given for 2015E and 2016E QEPM comparable companies;

(c) the observed transaction-by-transaction dates, enterprise values, pricing multiples and financial metrics;

(d) the ranges of EV to EBITDA multiples selected by TPH.

37. The purpose of a comparable companies analysis is to take ostensibly similarly-situated companies in the same sector, examine critical earnings metrics, and compare those metrics to the company being analyzed. Similarly, the purpose of a precedent transaction analysis is to take

ostensibly similar business combinations, examine critical payment metrics paid by the buyer, and compare those metrics to the corporate transaction being analyzed.

38.     The way that such relative valuation analyses have meaning is when the data sets used to arrive at assumptions in the analyses and the reasons for selecting the data sets are transparent. There is no such transparency here. Accordingly, QEP's public unitholders are unable to employ their own subjective judgment to reassess the outcome of the analyses based on companies and/or transactions that they may deem more comparable.

    *(f)*    *Financial Projections*

39.     On page 63 of the Registration Statement, Defendants state regarding the indicated financial projections, "BENTEK pricing for QEPM and QEP Field Services." However, Defendants do not describe whether BENTEK pricing pertains to TLLP and if not, why not. Moreover, on pages 63-64 of the Registration Statement, Defendants fail to include (a) Unlevered free cash flows; (b) Reconciliation of GAAP net income to non-GAAP UFCF and non-GAAP EBITDA; and, (c) Additional tables with the adjusted figures used by TPH for QEPM and TLLP. These omissions are material.

40.     The TLLP projections only run to 2017, and are rapidly growing at the end of the three-year period. Contrast this to the much longer projection period of QEP, the latter portion of which is marked by declining EBITDA and distributable cash flow. Defendants need to justify the differences in projection length and trajectory, because they are likely to influence the DCF and Present Value of Future Unit Price results. Defendants also need to explain whether TLLP is expected to peak and decline around 2021-2024, as is projected for QEP; and if not, why not. The importance of full disclosure on financial projections cannot be overstated. *See, e.g., In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 209 (Del. Ch. 2007) ("The Netsmart stockholders face a

threat of irreparable injury if an injunction does not issue until such time as the Netsmart board discloses additional information, to wit, the full November 18, 2006 William Blair revenue and earnings projections including the years 2010 and 2011.").

       (g)     *Discounted Cash Flow Analysis and Present Value of Future Unit Price*

       41.     A discounted cash flow analysis projects future potential and measures it to a present value.  "[T]the discounted cash flow analysis [is] arguably the most important valuation metric" for a company.  *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, No. 5002-CC, 2009 WL 4725866, at *1 (Del. Ch. Nov. 18, 2009); *see also ONTI, Inc. v. Integra Bank*, 751 A.2d 904, 916 (Del. Ch. 1999) ("While no method of valuation is preferable per se in Delaware, . . . this Court frequently has employed the discounted cash flow as at least one method of valuation."); *Neal v. Alabama By-Products Corp.*, CIV. A. No. 8282, 1990 WL 109243, at *7 (Del. Ch. Aug. 1, 1990) ("[The DCF analysis] is considered by experts to be the preeminent valuation methodology.").

       42.     On pages 66-67 of the Registration Statement, Defendants summarize the discounted cash flow analysis conducted by TPH.  However, the Registration Statement omits:

       (a)     the projections reflecting (i) NYMEX strip pricing for QEPM and (ii) mid-year drop-downs for TLLP;

       (b)     a valuation summary detailing the calculation of fully diluted shares, equity value (at the unaffected price and the offer) and enterprise value (at the unaffected price and the offer);

       (c)     how free cash flow is calculated;

       (d)     an identification, quantification and source of the WACC assumptions;

       (e)     the implied perpetuity growth rates corresponding to the assumed range of terminal pricing multiples;

(f) the objective selection criteria and display the observed company-by-company pricing multiples, yields and financial metrics examined by TPH for the peer group used for the pro-forma analysis (*N.B.*, a different peer group than was used for QEPM Status Quo);

(g) a justification for the use of different peer groups (and therefore different ranges of terminal pricing multiples) for the QEPM analysis and the pro forma analysis, respectively, especially since QEPM is part of the pro forma (i.e., post-merger) company; and,

(h) the bases for the "implied value of the general partner interests and incentive distribution rights."

43. Similarly, on page 68 of the Registration Statement, Defendants provide a Present Value of Future Unit Price Analysis but omit an identification, quantification and source of TPH's cost-of-equity assumptions.

44. Without disclosure of this information underlying TPH's analyses, QEP's public unitholders are unable to intelligently and rationally make informed decisions about QEP's value and, ultimately, about whether the merger is in their best interests.

## COUNT I

**Claim Against the Individual Defendants and TLLP for Violations of
Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the relevant period, the Individual Defendants and TLLP disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. The Registration Statement was prepared, reviewed and/or disseminated by the Individual Defendants and TLLP. It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the proposed takeover of QEP by TLLP, and the actual intrinsic value of the Company's assets.

48. In so doing, the Individual Defendants and TLLP made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder. By virtue of their positions within the Company, the Individual Defendants and TLLP were aware of this information and of their duty to disclose this information in the Registration Statement.

49. The Individual Defendants and TLLP were at least negligent in filing the Registration Statement with these materially false and misleading statements.

50. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the proposed takeover of QEP by TLLP. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to shareholders.

51. By reason of the foregoing, the Individual Defendants and TLLP have violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

52. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

### Claim Against the Individual Defendants and TLLP for
### Violation of Section 20(a) of the 1934 Act

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of QEP within the meaning of §20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of QEP and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants and TLLP was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the proposed takeover of QEP by TLLP. They were thus directly involved in the making of this document.

57. TLLP also had direct supervisory control over composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or

misrepresented in the Registration Statement. TLLP, in fact, disseminated the Registration Statement and is thus directly responsible for materially misleading shareholders because it permitted the materially misleading Registration Statement to be published to shareholders.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants and TLLP were each involved in negotiating, reviewing and approving the proposed takeover of QEP by TLLP. The Registration Statement purports to describe the various issues and information that they reviewed and considered, descriptions which had input from both the directors and TLLP.

59. By virtue of the foregoing, the Individual Defendants and TLLP have violated §20(a) of the 1934 Act.

60. As set forth above, the Individual Defendants and TLLP had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, QEP's shareholders will be irreparably harmed.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in Plaintiff's favor and in favor of the Class and against Defendants as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from finalizing and consummating the proposed takeover of QEP by TLLP,

unless and until the Defendants provide all material disclosures to shareholders with which they are able to make informed decisions about whether to vote their shares in favor of the proposed takeover of QEP by TLLP;

C. Implementation of a constructive trust, in favor of Plaintiff, upon any benefits improperly received by Defendants as a result of their wrongful conduct; and,

D. Granting such other and further equitable relief as this Court may deem just and proper.

DATED: May 19, 2015

Respectfully submitted,

/s/ Patrick W. Powers
PATRICK W. POWERS

POWERS TAYLOR LLP
PATRICK W. POWERS
State Bar No. 24013351
MEREDITH BLACK-MATHEWS
State Bar No. 24055180
Campbell Centre II
8150 North Central Expressway, Suite 1575
Dallas, TX  75206
Telephone:  214/239-8900
214/239-8901 (fax)
patrick@powerstaylor.com
meredith@powerstaylor.com

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
State Bar No. 24001788
8150 N. Central Expressway, Suite 1575
Dallas, TX  75206
Telephone:  214/239-4568
281/254-7789 (fax)
wbriscoe@thebriscoelawfirm.com

                                                CULLIN O'BRIEN LAW, P.A.
                                                CULLIN O'BRIEN
                                                6541 NE 21st Way
                                                Ft. Lauderdale, Florida 33308
                                                cullin@cullinobrienlaw.com
                                                (561) 676-6370;
                                                (561) 320-0285 (fax)

                                                Attorneys for Plaintiff